UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| Wells Fargo Bank, N.A., | Case No. 2:17-cv-00292-RFB-BNW |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| JEP Leasing, LLC et al, | |
| Defendants. | |

### I. INTRODUCTION

The Court held a three-day bench trial on December 11-12, 2019, and January 10, 2020. This order follows with the Court's findings of fact and conclusions of law.

### II. PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint on January 31, 2017.

On November 21, 2017, Magistrate Judge Leen granted [ECF No. 23] Defendants' Motion to Strike Discovery. ECF No. 28. Judge Leen found that because Wells Fargo did not timely disclose a promissory note between Defendants and Wachovia Bank for a $2,000,000 loan dated September 28, 2007, that the document would be limited to impeachment purposes.

On March 20, 2018, the Court granted in part and denied in part [ECF No. 10] Plaintiff's Motion for Partial for Summary Judgment on Liability and the Amount of Indebtedness. ECF No. 31. The Court ruled that Defendants JEP Leasing and Jerry Polis were liable for breach with respect to the 2013 loan as JEP Leasing did not make payments on the loan beginning in April 2015. The Motion was denied as to the breach of contract claim against Defendant Polis Trust. The amount of indebtedness was to be determined by bench trial and hearing pursuant to NRS § 40.457. It was further ordered that the Defendants' [ECF No. 19] Motion for Summary Judgment was denied

without prejudice.

The three-day bench trial was held on December 11-12, 2019 and January 10, 2020.

### III. FACTUAL FINDINGS

The Court makes the following factual findings from the bench trial. Defendant JEP Leasing, LLC ("JEP") obtained a loan from Plaintiff's predecessor in interest, Wachovia Bank, for $4,493,575.68 on August 28, 2006. The loan was supported by a Promissory Note ("2006 Note") also dated August 28, 2006. On that date, Defendant Jerry E. Polis ("Polis") and the Jerry E. Polis Family Trust ("Polis Trust") also executed guaranties in favor of Wachovia. The terms of the Promissory Note stated that the loan would be paid in full by eighty-four consecutive payments (seven years).

Defendants made payments to the 2006 Note loan from 2006 to 2013. According to the amortization schedule, the principal balance on the loan decreased to $3,161,551.46 by the eighty-fourth payment.

On August 28, 2013, parties negotiated another Promissory Note ("2013 Note"). The "Principal amount of loan proceeds disbursed" stated in the 2013 Note was $4,564,951.16. Beyond the maturity date, the 2013 Note had terms that differed from the 2006 Note. These new terms included, *inter alia*, an escalating twenty-four monthly installment payment schedule and a non-default annual interest rate of 4%. Polis also executed a continuing guaranty on behalf of himself and the Polis Trust reaffirming their guarantee of JEP's indebtedness. Importantly, Wells Fargo did not actually disburse any new funds to Defendants subsequent to the execution of the 2013 Note. Defendants then made payments toward the 2013 Note.

On April 28, 2015, JEP defaulted on the 2013 Note. In a demand letter dated October 28, 2015, Wells Fargo provided notice to Defendants of the default and demanded immediate payment of the entire owed amount. The 2013 Note stated that upon default, *inter alia,* interest shall accrue at 12% per year. The loan was secured by real property identified as 2631 Thousandaire Blvd., Pahrump, Nevada 89048 and a 2002 Cessna 560XL airplane owned by JEP. In 2015, the airplane was sold. Then, in 2016, the real property was sold to Wells Fargo as the highest bidder at $655,000.00.

The Court finds as a factual matter that Polis made a unilateral mistake regarding the principal balance of the 2013 Note and that Wells Fargo was aware of this mistake but failed to remedy it. Polis believed the 2013 Note to be a modification of the terms of the 2006 Note but that the latter Note was intended to address the same debt against which he had been making payments since 2006. He mistakenly believed the $4,564,951.16 stated in the 2013 Note to be the $4,493,575.68 loan he initially agreed to in the 2006 Note. He did not understand there was a discrepancy until this litigation was commenced. Polis believed that the payments he had made to pay off the 2006 Note would be credited towards his payment of the 2016. The Court finds Polis' testimony and belief as to the terms of the 2013 Note to be credible.

Polis had at least one other pre-existing loan with Wachovia, but the Court does not find that he understood this other loan or any other financial obligations to Wachovia or Wells Fargo to be the subject of the 2013 Note. Wells Fargo representatives knew that Polis believed that the 2013 Note was essentially a modification or rollover of the 2006 Note with an extended maturity date and some added terms as to interest. Polis had conversations and communications with Wells Fargo representatives, including Melinda Harris, in which he communicated his understanding of the material terms of the 2013 Note. Wells Fargo understood that Polis trusted its representatives. While Wells Fargo was aware that Plaintiff believed the 2013 Note to based solely on the debt (and payments) from the 2006 Note, Wells Fargo did not take action to inform Polis about their position that the 2013 Note was actually directed to at least two outstanding loans, including the 2006 Note, that Polis had with the bank.

### IV. LEGAL STANDARD

#### A. Breach of Contract

Under Nevada law, to show a breach of contract a plaintiff must show "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 899 (9th Cir. 2013). "[W]hether a contract exists is [a question] of fact . . . ." Certified Fire Prot. Inc. v. Precision Constr., 283 P.3d 250, 255 (2012).

"Parties may mutually consent to enter into a valid agreement to modify a former contract. And parol evidence may be used to show an agreement to modify. Similarly, consent to a

modification may be implied from conduct consistent with an asserted modification." Clark Cty. Sports Enterprises, Inc. v. City of Las Vegas, 606 P.2d 171, 175 (Nev. 1980). "In order to justify modification, the evidence must be clear and convincing." Id.

By contrast, "A novation consists of four elements: (1) there must be an existing valid contract; (2) all parties must agree to a new contract; (3) the new contract must extinguish the old contract; and (4) the new contract must be valid. If all four elements exist, a novation occurred. Additionally, the intent of all parties to cause a novation must be clear. However, consent to a novation may be implied from the circumstances of the transaction and by the subsequent conduct of the parties. Novation is a question of law only when the agreement and consent of the parties are unequivocal. Whether a novation occurred is a question of fact if the evidence is such that reasonable persons can draw more than one conclusion." United Fire Ins. Co. v. McClelland, 780 P.2d 193, 195–96 (1989) (citations omitted).

### B. Unilateral Mistake in Contract Formation

A unilateral mistake occurs "when one party makes a mistake as to a basic assumption of the contract, that party does not bear the risk of mistake, and the other party has reason to know of the mistake or caused it." In Re Irrevocable Trust Agreement of 1979, 331 P. 3d 881, 885 (Nev. 2014) (citing Home Savers, Inc. v. United Sec. Co., 741 P.2d 1355, 1356–57 (Nev. 1987) (adopting Restatement (Second) of Contracts § 153 (1981))).

Nevada permits at least three equitable remedies when there is a unilateral mistake: (i) rescission, (ii) reformation, and (iii) voiding the contract. A court may rescind a contract based on a unilateral mistake if "[i] the other party had reason to know of or [ii] caused the mistake." Pepe v. Eighth Judicial Dist. Court of ex rel. Cty. of Clark, 238 P.3d 845 (Nev. 2008). Similar to rescission, a court may reform a contract to reflect the mistaken belief of a party "where one party makes a unilateral mistake and the other party knew about it but failed to bring it to the mistaken party's attention." Tropicana Pizza, Inc. v. Advo, Inc., 238 P.3d 861 (Nev. 2008). Further, a contract is voidable, "Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of

mistake under the rule stated in § 154, and (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) the other party had reason to know of the mistake or his fault caused the mistake." Id. (citing Home Savers, Inc. v. United Security Co., 103 Nev. 357, 741 P.2d 1355 (Nev. 1987)).

### C. Deficiency Hearings under Nevada Law

"Nevada's one-action rule, set forth in NRS § 40.430, says that 'there may be but one action for the recovery of any debt, or for the enforcement of any right secured by a mortgage or other lien upon real estate. That action must be in accordance with the provisions of NRS § 40.430 to 40.459, inclusive.' NRS § 40.430(1). This statute ... requires a lender to proceed against a borrower's pledged security before seeking a deficiency judgment against the borrower, thereby preventing the lender from inflating its recovery with an unfairly low credit bid …" Lavi v. Eighth Jud. Dist. Ct., 325 P.3d 1265, 1269–71 (Nev. 2014) (internal citations omitted).

NRS § 40.455 states, *inter alia*, that "upon application of the judgment creditor or the beneficiary of the deed of trust within 6 months after the date of the foreclosure sale and after the required hearing, the court shall award a deficiency judgment to the judgment creditor or the beneficiary of the deed of trust if it appears from the sheriff's return or the recital of consideration in the trustee's deed that there is a deficiency of the proceeds of the sale and a balance remaining due to the judgment creditor or the beneficiary of the deed of trust, respectively." NRS § 40. 457(1) states, *inter alia*, that "Before awarding a deficiency judgment under NRS § 40.455, the court shall hold a hearing and shall take evidence presented by either party concerning the fair market value of the property sold as of the date of the foreclosure sale."

"Fair market value is the price which purchaser, willing but not obliged to buy, would pay an owner willing but not obliged to sell, taking into consideration all the uses to which the property is adapted and might in reason be applied. The district court has wide discretion as to what evidence to consider in determining fair market value. But the district court must take evidence from both parties concerning the property's fair market value at the time of the foreclosure sale." Nhu Thi Tran v. Town & Country Bank, No. 60948, 2014 WL 859227, at *2 (Nev. Feb. 28, 2014) (internal citations and quotations omitted).

There is a statutory limit as to the amount a court may award. NRS § 40.459 states that, "After the hearing, the court shall award a money judgment against the debtor, guarantor or surety who is personally liable for the debt," but "shall not render judgment for more than:

> (a) The amount by which the amount of the indebtedness which was secured exceeds the fair market value of the property sold at the time of the sale, with interest from the date of the sale; or
> (b) The amount which is the difference between the amount for which the property was actually sold and the amount of the indebtedness which was secured, with interest from the date of sale, whichever is the lesser amount." Id.

## V. DISCUSSION

The Court previously found that JEP Leasing and Polis are liable to Wells Fargo for breach of contract. ECF No. 31. The Court finds that Polis made a unilateral mistake and that based upon the record, reformation of the 2013 Note is appropriate.

### A. Choice of Law

Prior to deciding the effect of this unilateral mistake, the Court must first resolve the dispute between the parties as to which state's law applies to the dispute here.

In an action based on diversity jurisdiction, the court applies the choice-of-law principles of the forum state. Aqua-Marine Constructors, Inc. v. Banks, 110 F.3d 663, 670 (9th Cir. 1997). Nevada courts enforce contractual choice of law provisions if the jurisdiction set by the agreement has a substantial relationship with the transaction and the agreement is not contrary to Nevada public policy. Pentax Corp. v. Boyd, 904 P.2d 1024, 1026 (Nev. 1995). To determine whether a state possesses a substantial relationship with a contract, courts consider five factors: "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." Consolidated Generator-Nev. Inc. v. Cummins Engine Co., Inc., 971 P.2d 1251, 1253-54 (Nev. 1998) (citations omitted).

The 2013 Note has a choice of law clause which designates Minnesota law as the law by which the Note is to be interpreted. Wells Fargo argues Plaintiff's defense of mistake fails pursuant to Minnesota law because Wells Fargo did not act inequitably in negotiating and executing the 2013 Note.

Under Minnesota law, a written instrument may be reformed by the Court if:

"1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party. * * * These facts must be established by evidence which is clear and consistent, unequivocal and convincing."

Manderfeld v. Krovitz, 539 NW 2d 802, 805 (Minn. Ct. App. 1995) (internal citations omitted).

First, The Court finds that Nevada law applies to the 2013 Note. Even though parties chose Minnesota law to govern the 2013 Note, the Court finds that it is not applicable pursuant to Nevada's choice of law inquiry. Nevada has a substantial relationship to this transaction and has fundamental public policies at stake. Defendants JEP Leasing, LLC and Jerry Polis are based in Nevada. The real property used as collateral for the 2013 Note is in Pahrump, Nevada. Mr. Vlcek and Ms. Harris visited Polis in Henderson, Nevada in June 2015 to negotiate the outstanding loan. Nevada additionally has significant public policy interest in protecting its corporations and citizens. Wells Fargo is located in Minnesota as stated on the 2013 Note. However, Minnesota has no connection to the contract at issue, especially given that the 2013 Note is based off the 2006 Note with Wachovia, which was located in North Carolina. Accordingly, the Court finds that Nevada law applies to the 2013 Note, and that even if Minnesota law applies, the Court's finding regarding reformation and unilateral mistake remains the same.

### B. Polis Made a Unilateral Mistake

The Court finds factually and legally that Polis made a unilateral mistake based upon the Court's factual findings as to his understanding of the 2013 Note. Specifically, the Court finds that Polis made a unilateral mistake regarding, *inter alia*, the underlying debt, the principal balance, and the extent to which payments made under the 2006 Note would be credited toward the 2013 Note.

The Court finds that Polis' interpretation of the $4,564,951.16 "loan proceeds disbursed" was a reasonable misunderstanding of the "basic assumption" of the 2013 Note. In Re Irrevocable Trust Agreement of 1979, 331 P. 3d 881, 885 (Nev. 2014) (citing Home Savers, Inc. v. United

Sec. Co., 741 P.2d 1355, 1356–57 (Nev. 1987) (adopting Restatement (Second) of Contracts § 153 (1981))). The 2013 Note stated, "The undersigned Guarantor acknowledges the above [2013 Note] and agrees that the Guarantor's obligations under the Guaranty dated August 28, 2006 continues in full force and effect." The 2013 Note did not clearly indicate that its stated principal included any other outstanding loans Polis had with Wells Fargo besides the one Polis had been paying down since 2006. Polis understood the 2013 Note to be a modification of the 2006 Note with new terms, and that the payments made to the 2006 Note and the 2013 Note would be credited toward paying off the 2006 loan. The Court credits his testimony.

The Court rejects Plaintiff's argument that Polis waived his unilateral mistake defense. The Court finds that Polis did not become fully aware of Wells Fargo's position as to this debt until this litigation commenced. Additionally, Defendants' breach of the 2015 Note also does not alter the Court's finding. That is because Wells Fargo's own conduct prior to the breach contributed to Polis' unilateral mistake and his misunderstanding of the terms of the specific terms of the 2013 Note. The Court thus finds that Polis did not waive this argument or defense.

### C. Reformation of the 2013 Note Is Appropriate

The Court finds that an appropriate equitable remedy to address Polis' unilateral mistake of which Wells Fargo was aware is to reform the terms of the 2013 Note so that they are consistent with Polis' belief as to the relevant material terms of the 2013 Note. Beyond its finding that Wells Fargo was aware of this unilateral mistake and failed to correct it, the Court finds this remedy also to be appropriate because it would not substantially prejudice Wells Fargo.[1] In reaching this conclusion, the Court also takes note of the fact that Wells Fargo did not in fact disburse any additional funds to Polis in connection with execution of the 2013 Note. The Court further finds that Wells Fargo took advantage of Polis' trust of its employees, understanding that Polis would not scrutinize all of the specific terms of the 2013 Note.[2]

---

[1] As the Court is reforming the contract to only cover the debt of the 2006 Note, Wells Fargo cannot assert that some other debt would also be covered by the Court's reformation. Moreover, Wells Fargo was precluded due to a discovery violation from affirmatively bringing in evidence of another prior loan.

[2] The Court finds that even if Minnesota law were applied, that the Court's finding would remain the same. There was no meeting of the minds when parties negotiated and executed the

- 8 -

The Court now specifically reforms the 2013 Note with respect to two key terms of this Note. First, the Court invokes its equitable jurisdiction to reform the 2013 Note to reflect Polis' understanding that "principal amount of loan proceeds disbursed: $4,564,951.16" stated on the Note was the original $4,493,573.68 loan that he borrowed from Wachovia in 2013, and not a new outstanding principal. The principal amount of the 2013 Note shall now be $4,493,573.68. Second, the Court reforms the 2013 Note so that Polis shall receive credit against this principal balance for all payments he made on both the 2006 Note and 2013 Note.

The Court now turns to the valuation of the collateral property that was liquidated and paid to Plaintiff to determine whether any deficiency exists under the reformed contact.

### D. Valuation of Property Pursuant to Section 40.455

The Court, pursuant to NRS § 40.455, now engages in a fair market valuation of the collateral property that was sold.

Personal property securing the debt, a 2002 Cessna 560XL airplane, was sold in 2015. There is no bill of sale for the plane in the record. The aircraft was sold on March 28, 2015 for approximately $2,562,000. Defendants stipulated that $2,526,000 was received and applied toward the loan. The Court thus finds that the value of the airplane used to secure the loan was $2,562,000 and this amount must be applied to the outstanding balance of the 2013 Note.

The real property securing the debt, 2631 Thousandaire Blvd., Pahrump, Nevada, 89048 was sold to Wells Fargo at $650,000 which was the highest bid at the September 8, 2016 foreclosure sale. The Court finds that the fair market value of the real property was $750,000 at the date of the foreclosure sale. Both appraisers agreed that the sales comparison method was the most appropriate method of appraisal; that the best use of this 76.06-acre parcel of vacant, unimproved property was for residential development; and that the southern area of Pahrump was preferred for residential development rather than the central area. Upon review of the record, testimony, and assumptions such as water rights, home sale trends at the time, and relevant

---

2013 Note. When executing the 2013 Note, Polis intended to pay off the 2006 Note under the 2013 Note's new terms. The Court finds that under Minnesota law, Wells Fargo acted inequitably because it knew that Polis trusted and relied upon its employees. Its employees knew that because of that trust he would not scrutinize the contract and it failed to correct his misunderstanding despite knowing of it. The Court finds that the record would also support clearly support reformation under Minnesota law.

comparable sales, the Court finds that $750,000 was the fair market value of 2631 Thousandaire Blvd. on September 8, 2016. Accordingly, the Court finds that the amount of indebtedness under the 2013 Note must also be offset by $750,000 in accordance with NRS § 40.459.

### E. No Deficiency Exists

The Court finds that the proceeds from the sale of personal property and Trustee's sale that constituted collateral for the loan, in addition to the payments made toward the balance, results in full satisfaction of the 2013 Note. Accordingly, there is no remaining amount that is owed on Wells Fargo's affirmative claims.

The Court finds, pursuant to its reformation of the 2013 Note, that the principal amount of the Note was $4,493,575.68. Pursuant to the amortization schedule (under the 2006 Note), after 84 payments, the principal balance would have been paid down to $3,161,551.46 in 2013. Defendants continued to make payments until they defaulted in April 2015.

When Defendants defaulted in 2015, Wells Fargo sold the airplane that served as collateral for the loan. The Court determined *supra* that the value of the airplane was $2,562,000. Wells Fargo then foreclosed on the real property located at 2631 Thousandaire Blvd., Pahrump, Nevada, that also served as collateral for the loan. The Court determined *supra* that the fair market value of the real property at the time of foreclosure was $750,000. Therefore, the total proceeds of the collateral were $3,312,000.

The Court finds that as of October 28, 2015, the outstanding principal balance was $1,630,521.02, the accrued interest was $32,791.65, and the late charges were $102,290.29, totaling to $1,765,602.96.

The Court finds that the $3,312,000 proceeds from the collateral sales of the real and personal property exceed the unpaid debt. With respect to interest and late charges, the Court finds that even adding in the total interest and late charges that the proceeds from the sale of the collateral exceed the total amount owed on the 2013 Note as of the date of this order. As a result, all outstanding debt from the 2013 Note has been paid back. Polis has not also made any counterclaims against Wells Fargo.

Consequently, the Court further reconsiders its ruling that the JEP and Polis breached the

1 | 2013 Note. As the Court has found no damages for this breach, this claim must be dismissed along
2 | with Plaintiff's other claims.

### VI. CONCLUSION

**IT IS ORDERED** that the Court finds in favor of Defendants as to all of Plaintiff's claims. All amounts that remained due and owing from the 2013 Note were fully repaid and satisfied with application of prior payments and the sale of collateral, including the plane and real property.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment for Defendants and close this case.

DATED: July 15, 2021.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**